# UNITED STATES DISTRICT COURT
Western District of Kentucky
Louisville Division

| | |
|---|---|
| Keith Thompson *and*<br>Tracy Thompson<br>　　　*Plaintiffs*<br><br>v.<br><br>Credence Resource Management, LLC<br>　　　*Defendant*<br>Serve:<br>　　　Corporation Service Company<br>　　　421 West Main Street<br>　　　Frankfort, KY 40601<br><br>Equifax Information Services, LLC<br>　　　*Defendant*<br>Serve:<br>　　　Corporation Service Company<br>　　　421 West Main Street<br>　　　Frankfort, KY 40601<br><br>Experian Information Solutions, Inc.<br>　　　*Defendant*<br>Serve:<br>　　　CT Corporation System<br>　　　306 West Main Street, Suite 512<br>　　　Frankfort, KY 40601<br><br>I.C. System, Inc.<br>　　　*Defendant*<br>Serve:<br>　　　CT Corporation System<br>　　　306 West Main Street, Suite 512<br>　　　Frankfort, KY 40601<br><br>Trans Union, LLC<br>　　　*Defendant*<br>Serve:<br>　　　The Prentice Hall Corp. System<br>　　　421 West Main Street<br>　　　Frankfort, KY 40601 | Case No. 3:21-cv-143-RGJ |

_____)

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This is a complaint for damages for Defendants' separate violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2.      Jurisdiction of this court arises under 28 U.S.C. § 1331; the FCRA, 15 U.S.C. § 1681p; and the FDCPA. 15 U.S.C. § 1692k. Venue is proper, because many of the relevant events affected and/or damaged consumers living within Hardin County, Kentucky, which is located within this District.

### PARTIES

3.      Plaintiff Keith Thompson a natural person who resides in Hardin County, Kentucky and a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c), and the FDCPA, as defined at 15 U.S.C. § 1692a(3).

4.      Plaintiff Tracy Thompson a natural person who resides in Hardin County, Kentucky and a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c), and the FDCPA, as defined at 15 U.S.C. § 1692a(3).

5.      Defendant Credence Resource Management, LLC ("Credence"), is a Nevada limited liability company whose principal place of business located at 17000 Dallas Parkway, Suite 204, Dallas, TX 75248. Credence has registered with the Kentucky Secretary of State and is engaged in the business of purchasing and collecting debts directly or indirectly from Kentucky citizens and consumers, among others, on the behalf of creditors.

6.      Credence is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) because it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts. Credence is also a "furnisher of information" to credit reporting agencies within the meaning of the FCRA.

7.      Defendant Equifax Information Services, LLC ("Equifax") is a foreign corporation whose principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309 registered to do business with Kentucky Secretary of State. Equifax  is  a  "consumer  reporting

agency" within the meaning of the FCRA because it provides and acquires personal retail and credit transaction information of private persons for use in, and in furtherance of, its business operations.

8.      Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation whose principal place of business is located at 475 Anton Boulevard, Costa Mesa, CA 92626 registered to do business with Kentucky Secretary of State. Experian  is  a  "consumer reporting agency" within the meaning of the FCRA because it provides and acquires personal retail and credit transaction information of private persons for use in, and in furtherance of, its business operations.

9.      Defendant I.C. System, Inc. ("I.C. System") is a foreign corporation registered with the Kentucky Secretary of State to do business in the Commonwealth. I.C. System's main address is 444 Highway 96 East, St Paul, MN 55127 2557 and is engaged in the business of collecting debts from Kentucky citizens and consumers on the behalf of creditors.

10.      I.C. System is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) because it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts. I.C. System is also a "furnisher of information" to credit reporting agencies within the meaning of the FCRA.

11.      Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company whose principal place of business is located at 555 West Adams, Chicago, IL 60661. Trans Union is registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA because it provides and acquires personal retail and credit transaction information of private persons for use in, and in furtherance of, its business operations.

## STATEMENT OF FACTS

I.      **Facts as to Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC**

12.      Plaintiffs' claims against the Defendant consumer reporting agencies ("CRA's")— Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Trans Union, LLC ("Trans Union")—concern a breakdown in the FCRA dispute process.

13.      As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.

Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."

But even if you're not in the market for a loan, good credit can have a major impact, Weston says.

"Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.

Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.

Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

14.    For the vast majority of Americans, a person's credit score is determined based on the information contained in credit reports compiled and published by the CRA's.

15.    Recognizing the importance of credit reporting to ordinary American life, Congress enacted the FCRA fifty (50) years ago to effectuate the following:

**(a) Accuracy and fairness of credit reporting**

The Congress makes the following findings:

---

[1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

**(b) Reasonable procedures**

It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681.

16.     The FCRA giveth and the FCRA taketh away.

17.     The FCRA creates obligations for CRA's and provides statutory rights for consumers. But the FCRA also provides protection and immunity from a large swath of state statutory and common-law claims.

18.     The FCRA provides a "quid pro quo grant of protection for statutorily required disclosures." *McAnly v. Middleton & Reutlinger*, P.S.C., 77 F. Supp. 2d 810, 814 (W.D. Ky. 1999). Because "various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, [15 U.S.C. § 1681h(e)] guarantees that the agencies or users cannot be sued for those required disclosures under state tort law." *Id.*  So, while the FCRA creates liabilities for violations of the FCRA, it also

immunizes CRA's and furnishers of credit information from common law claims. Likewise, the FCRA creates a fairly complicated procedure for consumers to correct errors on their credit report and statutory remedies when those procedures fail.

19.     To correct most errors on credit reports published by the CRA's, the FCRA requires a consumer to file disputes with the CRA's concerning false and inaccurate information on their credit reports. This imposes a duty on the CRA's **(i)** to conduct a reasonable investigation of the consumer's disputes and **(ii)** to forward the consumer's disputes to the furnishers of the credit information in question. Receipt of the dispute from the CRA's requires the furnishers of the credit information to likewise conduct a reasonable investigation of the dispute and forward the results of their investigation to the CRA's. The CRA's then are required to send prompt notice of the results of to the consumer. In sum, the FCRA essentially gives both CRA's and furnishers of credit information a free bite at the apple to correct errors on a consumer's credit report after being put on notice of the incorrect credit information. Correction or deletion of credit information (commonly referred to as tradelines) insulates the CRA's and furnishers from any statutory liability under the FCRA.

20.     But when the system breaks down—*e.g.* if the CRA's fail to investigate, fail to send notice of a consumer's disputes to the furnishers, and fail to send the results of the investigation to the consumer—the consumer is left out in this cold without any substantive means of redress or to correct credit report errors. A breakdown happened here. Plaintiffs sent multiple disputes to the Defendant CRA's Equifax, Experian, and Trans Union, but the Defendant CRA's did not send Plaintiffs notice of the results of its investigations and, presumably, did not send notice of Plaintiffs' disputes to the furnishers of credit information (including but not limited to Defendants Credence Resource Management, LLC and I.C. System, Inc.).

21.     Plaintiffs are keenly aware that every error on their credit reports negatively impacts their credit score and their ability to obtain credit.

22.     Consequently, Plaintiffs regularly review their credit reports, including credit reports published by Defendants Equifax, Experian, and Trans Union.

23.     Plaintiffs sent multiple dispute letters to the Defendant CRA's Equifax, Experian, and Trans Union challenging credit items on their credit reports that they did not believe were correct.

24.     Receipt of each of Plaintiffs' dispute letters triggered the CRAs' duties to **(i)** conduct a reasonable investigation of Plaintiffs' disputes, 15 U.S.C. 1681i(a)(1); **(ii)** send notice of Plaintiffs' disputes to the furnishers of the credit information disputed in the dispute letters within five business days of receipt of each of Plaintiffs' disputes, 15 U.S.C. § 1681i(a)(2); and

**(iii)** send Plaintiffs notice of the results of its investigation of each dispute within five (5) business days of completing its investigation.

25.     Equifax, Experian, and Trans Union each breached their statutory duties under 15 U.S.C. § 1681i.

26.     Equifax and Trans Union never sent Plaintiffs any notice of the results of their investigation of any of any of Plaintiffs' dispute letters.

27.     Experian never sent Mr. Thompson notice of the results of its investigations of Mr. Thompson's dispute letters. Experian, however, did send Mrs. Thompson notice of the results of the investigation of *one* of her disputes but did not send her notice of the results of any of her other disputes.

28.      Equifax, Experian, and Trans Union each have a demonstrated pattern and practice of not sending investigative dispute results to consumers after receipt of the consumer's disputes.

29.     According to the CFPB Complaint Database, 5,307 complaints have been filed against Equifax since January 1, 2020 that included a complaint that Equifax failed to notify the consumer/complainant of the results of its investigation of the consumer's dispute. The CFPB Complaint Database documents 5,179 consumer complaints against Experian for the same breach of its statutory duty to notify the consumer of the results of its investigation. And the CFPB Complaint Database documents 6,282 consumer complaints against Trans Union for the same breach of its statutory duty to notify the consumer of the results of its investigation.

30.     Notifying consumers of the results of a CRA's investigation is not cheap.  The CRA has to print out a physical report, put the report in an envelope addressed to the consumer, and pay the postage to mail the report to the consumer. This may cost the CRA several dollars for each dispute response when taking time, labor, and materials into account. Consequently, CRA's stand to reap substantial gains from not sending a consumer the statutorily required notice of the results of their investigation of the consumer's dispute.

31.     The CRAs' failure to send consumers like Plaintiffs notice of the results of their investigation of a consumer dispute is the exact type of informational injury that the FCRA was enacted to prevent.

32.     Because the Defendant CRA's Equifax, Experian, and Trans Union each failed to send him notice of the results of any of their investigation of his disputes, Mr. Thompson had to expend time, effort, and out-of-pocket expenses to obtain copies of his credit reports published by the CRA's.

33.     Because Equifax and Trans Union failed to send her notice of the results of any of their investigation of her disputes, Mrs. Thompson had to expend time, effort, and out-of-pocket expenses to obtain copies of her credit reports published by Equifax and Trans Union.

34.     Equifax, Experian, and Trans Union each violated the FCRA by failing to forward Plaintiffs' dispute letters to the furnishers of credit information that comprised the subject matter of Plaintiffs' disputes <u>and</u> by failing to send Plaintiffs notice of the results of each CRA's investigation (if any) of Plaintiffs' disputes.

## II.    Facts as to Credence Resource Management, LLC and I.C. System, Inc.

35.     Upon review of her credit reports, Plaintiff Tracy Thompson discovered a collection account furnished by Defendant Credence Resource Management, LLC ("Credence") (the "Credence Tradeline").

36.     The Credence Tradeline concerned an alleged past-due debt that Mrs. Thompson incurred to Direct TV.

37.     The Direct TV debt concerns telecommunication services used for personal, family, and/or household purposes, which makes the Direct TV debt a "debt" within the meaning of the FDCPA.

38.     Credence furnished negative credit information about Mrs. Thompson and the Direct TV debt in attempt to collect the Direct TV debt from her. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

39.     The Credence Tradeline noted the past-due balance was $372 with a date of first delinquency ("DOFD") of November 2019.

40.     The DOFD is crucial information on negative tradelines like the Credence Tradelines for two reasons. First, the DOFD determines the date that starts the clock for removal of the tradeline from credit reports under 15 U.S.C. § 1681b. Next, the DOFD determines the *recency* of a debt. Under most credit scoring models, including FICO, the more recent a debt, the more negative the debt's impact on a consumer's credit score.

41.     While Mrs. Thompson did not believe that the Direct TV debt was her debt, she was even more confident that, if hers, the DOFD was wrong and much too recent.

42.     To get more information about the Direct TV debt, Mrs. Thompson sent a dispute

letter directly to Credence.

43.    On July 14, 2020, Credence sent Mrs. Thompson a response to her dispute that simply noted that "[t]he creditor has verified that the charges on your account are valid."

44.    When Mrs. Thompson next reviewed her credit reports, she was relieved to see the Credence Tradeline was now gone. But her relief was short lived. Defendant I.C. System, Inc. ("I.C. System") was now reporting credit information concerning the Direct TV debt (the "I.C. System Tradeline").

45.    The I.C. System Tradeline was nearly identical to the Credence Tradeline: same past-due amount, same erroneous DOFD.

46.    Credence and I.C. System violated the FDCPA by furnishing false credit information to one or more CRA's in an attempt to collect the Direct TV debt from Mrs. Thompson. In particular, both Credence and I.C. System furnished incorrect DOFD's that postdated the actual DOFD, if any, by years.

## CLAIMS FOR RELIEF

### I.    Claims against Credence Resource Management, LLC

47.    The foregoing acts and omissions of Defendant Credence Resource Management, LLC ("Credence") constitute violations of the FDCPA, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA. Credence's violations include communicating credit information to the CRA's it knew or should have known was false in connection with collection of the Direct TV debt from Plaintiff Tracy Thompson in express violation of 15 U.S.C. § 1692e(8), and violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and one or more subsections of each statute.

### II.    Claims against Equifax Information Services, LLC

48.    The foregoing acts and omissions of Defendant Equifax Information Services, LLC ("Equifax") constitute violations of the FCRA as set forth below.

49.    Plaintiffs sent multiple dispute letters to Equifax.

50.    Upon receipt of Plaintiffs' disputes, Equifax had a duty under 15 U.S.C. § 1681i(a)(2) to send a copy of Plaintiffs' disputes to the entities furnishing the tradelines at issue in each dispute letter. Equifax violated its express statutory duty by failing to send the relevant furnishers notice of Plaintiffs' disputes.

51.    Upon receipt of Plaintiffs' disputes, Equifax had a duty under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable investigation of Plaintiffs' disputes. Equifax violated its express statutory duty by failing to conduct any investigation of Plaintiffs' disputes.

52.    Additionally, Equifax had an express duty under 15 U.S.C. § 1681i(a)(6) to send Plaintiffs prompt notice of the results of its and the relevant furnishers' investigation of Plaintiffs' disputes. Equifax violated its statutory duty by failing to send Plaintiffs notice of the results of any investigation of Plaintiffs' disputes.

53.    Equifax is liable to Plaintiffs for the actual damages each has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as their reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

54.    In the alternative, Equifax is liable to Plaintiffs for the actual damages each has sustained by reason of its negligent or grossly negligent violations of the FCRA, in an amount to be determined by the trier of fact, as well as their reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

### III.    Claims against Experian Information Solutions, Inc.

55.    The foregoing acts and omissions of Defendant Experian Information Solutions, Inc. ("Experian") constitute violations of the FCRA as set forth below.

56.    Plaintiff Keith Thompson sent multiple dispute letters to Experian.

57.    Upon receipt of Mr. Thompson's disputes, Experian had a duty under 15 U.S.C. § 1681i(a)(2) to send a copy of Mr. Thompson's disputes to the entities furnishing the tradelines at issue in each dispute letter. Experian violated its express statutory duty by failing to send the relevant furnishers notice of Mr. Thompson's disputes.

58.    Upon receipt of Mr. Thompson's disputes, Experian had a duty under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable investigation of Mr. Thompson's disputes. Experian violated its express statutory duty by failing to conduct any investigation of Mr. Thompson's disputes.

59.    Additionally, Experian had an express duty under 15 U.S.C. § 1681i(a)(6) to send Mr. Thompson prompt notice of the results of its and the relevant furnishers' investigation of Mr. Thompson's disputes. Experian violated its statutory duty by failing to send Mr. Thompson notice of the results of any investigation of Mr. Thompson's disputes.

60.     Experian is liable to Mr. Thompson for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as their reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

61.     In the alternative, Experian is liable to Mr. Thompson for the actual damages he has sustained by reason of its negligent or grossly negligent violations of the FCRA, in an amount to be determined by the trier of fact, as well as their reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

## IV.     Claims against I.C. System, Inc.

62.     The foregoing acts and omissions of Defendant I.C. System, Inc. ("I.C. System") constitute violations of the FDCPA, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA. I.C. System's violations include communicating credit information to the CRA's it knew or should have known was false in connection with collection of the Direct TV debt from Plaintiff Tracy Thompson in express violation of 15 U.S.C. § 1692e(8), and violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and one or more subsections of each statute.

## V.     Claims against Trans Union, LLC

63.     The foregoing acts and omissions of Defendant Trans Union, LLC ("Trans Union") constitute violations of the FCRA as set forth below.

64.     Plaintiffs sent multiple dispute letters to Trans Union.

65.     Upon receipt of Plaintiffs' disputes, Trans Union had a duty under 15 U.S.C. § 1681i(a)(2) to send a copy of Plaintiffs' disputes to the entities furnishing the tradelines at issue in each dispute letter. Trans Union violated its express statutory duty by failing to send the relevant furnishers notice of Plaintiffs' disputes.

66.      Upon receipt of Plaintiffs' disputes, Trans Union had a duty under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable investigation of Plaintiffs' disputes. Trans Union violated its express statutory duty by failing to conduct any investigation of Plaintiffs' disputes.

67.     Additionally, Trans Union had an express duty under 15 U.S.C. § 1681i(a)(6) to send Plaintiffs prompt notice of the results of its and the relevant furnishers' investigation of Plaintiffs' disputes. Trans Union violated its statutory duty by failing to send Plaintiffs notice of the results of any investigation of Plaintiffs' disputes.

68.     Trans Union is liable to Plaintiffs for the actual damages each has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as their reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

69.     In the alternative, Trans Union is liable to Plaintiffs for the actual damages each has sustained by reason of its negligent or grossly negligent violations of the FCRA, in an amount to be determined by the trier of fact, as well as their reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Keith Thompson and Tracy Thompson request that the Court grant them the following relief:

1.     Award maximum statutory damages to each Plaintiff against Defendants Equifax, Experian, and Trans Union for each such Defendant's willful violations of the FCRA pursuant to 15 U.S.C. § 1681n;

2.     Award maximum statutory damages to Plaintiff Tracy Thompson against Defendants Credence and I.C. System for each such Defendant's violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

3.     Award actual damages to each Plaintiff against Defendants Equifax, Experian, and Trans Union for each such Defendant's violations of the FCRA pursuant to 15 U.S.C. § 1681n or, in the alternative, 15 U.S.C. § 1681o;

4.     Award actual damages to Plaintiff Tracy Thompson against Defendants Credence and I.C. System for each such Defendant's violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

5.     Award punitive damages to each Plaintiff against Defendants Equifax, Experian, and Trans Union for each such Defendant's willful violations of the FCRA pursuant to 15 U.S.C. § 1681n;

6.     Award each Plaintiff attorney's fees, litigation expenses and costs pursuant to the FCRA and/or the FDCPA;

7.     A trial by jury; and

8.      Any other relief to which Plaintiffs may be entitled.


                              Respectfully Submitted,

                              /s/ James H. Lawson
                              James H. Lawson
                              *Lawson at Law, PLLC*
                              115 S. Sherrin Avenue, Suite 5
                              Louisville, KY 40207
                              Tel:    (502) 473-6525
                              Fax:    (502) 473-6561
                              E-mail: james@kyconsumerlaw.com

**VERIFICATION**

Plaintiff Keith Thompson declares as follows:

1.  I am one of the Plaintiffs in the present case.

2.  I reside in Hardin County, KY.

3.  I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called upon to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4.  I verify and affirm under the penalty of perjury under the laws of the United States of America and the Commonwealth of Kentucky that the factual averments in this Verified Complaint concerning myself and my activities are true and correct. 28 U.S.C. § 1746.

Executed on ___3·2-21___, 2021

_Keith Thompson_
Keith Thompson
*Plaintiff*

Plaintiff Tracy Thompson declares as follows:

1.  I am one of the Plaintiffs in the present case.

2.  I reside in Hardin County, KY.

3.  I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called upon to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4.  I verify and affirm under the penalty of perjury under the laws of the United States of America and the Commonwealth of Kentucky that the factual averments in this Verified Complaint concerning myself and my activities are true and correct. 28 U.S.C. § 1746.

Executed on ___3·2·21___, 2021

_Tracy Thompson_
Tracy Thompson
*Plaintiff*